UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
DAVID R. COLEMAN,                                 :
                                                                      :
      Plaintiff,                                           :         Civ. No. 15-1942 (RBK) (KMW)
                                                                      :
v.                                                                   :
                                                                      :         **OPINION**
UNITED STATES OF AMERICA, et al.,    :
                                                                      :
      Defendants.                                      :
_____:

**ROBERT B. KUGLER, U.S.D.J.**

### I. INTRODUCTION

Plaintiff was a federal prisoner incarcerated at the Federal Correctional Institution at Fort Dix in Fort Dix, New Jersey ("F.C.I. Fort Dix"). He filed a civil rights complaint pursuant to 42 U.S.C. § 1983 on March 16, 2015. (ECF No. 1.)

On June 19, 2015, Defendant the United States of America ("Defendant") filed the current motion to dismiss Plaintiff's Complaint. (ECF No. 6.) On August 17, 2015, Plaintiff filed a Brief in Opposition to Defendant's motion. (ECF No. 13.) Lastly, Defendant filed a Reply Brief in response to Plaintiff's Response on August 21, 2015. (ECF No. 15.)

For the following reasons, Defendant's motion will be granted in full.

### II. BACKGROUND

In his Complaint, Plaintiff names as Defendants the United States, John Does 1-10, Jane Does 10-30, and ABC Corporation. The motion at issue is on behalf of the United States, as it was the only party served with a summons.

Plaintiff alleges that, on January 21, 2013, he was taking a shower at F.C.I. Fort Dix and was struck in the head and knocked unconscious when a "iron/metal grate . . . fell from the wall."

(ECF No. 1 at 7.) Plaintiff then notified a Lieutenant Kennar that he needed medical attention. Upon this request, Lieutenant Kennar allegedly "slammed [Plaintiff] up against a wall and handcuffed [him] to a chair for several hours…." (*Id*. at 8.) Lt. Kennar also threatened to send Plaintiff to the Special Housing Unit (the "SHU") if he did not cooperate. The next morning, Plaintiff was accompanied to Health Services ("HS") by two nurses, Ms. Robinson and Ms. Parker. (*Id*.) At HS, Plaintiff was diagnosed with a concussion and given Tylenol. After continuing to experience "blurred vision and neck pain," Plaintiff was ultimately sent to St. Francis Medical Center ("SFMC") where he was diagnosed with a concussion and a C-6 spine facture. (*Id*.) Plaintiff was hospitalized for four (4) days and was discharged on January 25, 2013, with a prescription for Decadron[1] and a cervical collar. (*Id*.) When Plaintiff arrived back at F.C.I. Fort Dix he was told by Physician Assistant ("PA") Gibbs that Decadron was unavailable at the prison. (*Id*. at 8-9.)

The next day, January 26, 2013, Plaintiff was transported to HS by wheelchair because he could not move either his right arm or leg. The on call MD instructed PA Gibbs to put Plaintiff on a very low dose of prednisone because Decadron was still unavailable in the prison pharmacy. (*Id*. at 9.) The following day, January 27, 2013, Plaintiff was still unable to move his right side and was suffering severe pain. PA Gibbs took Plaintiff to Lieutenant Kael's office on a stretcher, going "the long way" in order to "increase Plaintiff's pain and discomfort." (*Id*.) Upon seeing Plaintiff, Lt. Kael, not believing Plaintiff was actually unable to walk, sent Plaintiff to the SHU for lying. (*Id*. at 10.)

Once in the SHU, Plaintiff claims that he lay on the floor (still unable to walk) in his "own urine, saliva, and vomit" until the next day. (*Id*. at 10-11.) The next morning Plaintiff was

---

[1] Decadron is a corticosteroid used to control cervical and cerebral swelling.

2

transferred to SFMC for evaluation. He was kept at SFMC for another four (4) days and diagnosed with a "deformity of cervical 5th vertebrae." (*Id*. at 11.) Plaintiff was returned to F.C.I. Fort Dix on January 31, 2015, and told to continue taking Decadron, using his cervical collar, and to start physical therapy to avoid further complications. (*Id*.) When he returned, however, Plaintiff was put back in the SHU until March 21, 2013. While in the SHU, Plaintiff routinely went without his medication, was "chained up" to a shower, and never received physical therapy. (*Id*.) Between June 25 and June 30, 2013, Plaintiff was transferred back and forth between F.C.I. Fort Dix and SFMC due to complaints of seizures. On June 30, 2013, Plaintiff was diagnosed with a seizure disorder and was not discharged from SFMC until July 6, 2013. (*Id*. at 12.) Plaintiff finally alleges that F.C.I. Fort Dix *never* afforded him his prescribed physical therapy or Decadron and, as a result, Plaintiff was constantly in excruciating pain and confined to his wheelchair for eighteen (18) months. (*Id*.) Plaintiff did not receive "proper medical treatment" until he was released from prison in August 2014. (*Id*.)

### III. CLAIMS

Plaintiff brings the following claims against Defendant:

Count One: Negligence under the Federal Tort Claims Act;
Count Two: Deliberate Indifference to Serious Medical Needs under § 1983;
Count Three: Cruel and Unusual Punishment under § 1983;
Count Four: Excessive Force under § 1983;
Count Five: Violation of the Americans with Disabilities Act;
Count Six: Negligent Hiring, Supervision, Training and Retention of Employees under the Federal Tort Claims Act;
Count Seven: Conspiracy pursuant to 42 U.S.C. § 1983; and
Count Eight: On behalf of co-plaintiff, Mrs. Tania Coleman, per quod.

## IV. STANDARD OF REVIEW

A. Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal quotations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief" under Rule 8(a)(2). *Id*. at 679.

B. Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured…

*See* 42 U.S.C. § 1983.

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v.*

*Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

## IV. DISCUSSION

A. § 1983 Claims Against Defendant United States of America are Dismissed with Prejudice

Plaintiff asserts all three Eighth Amendment claims (Count Two, Count Three, and Count Four), brought under 42 U.S.C. § 1983, against Defendant the United States of America, as well as a claim of conspiracy (Count Seven).

To be liable within the meaning of 42 U.S.C. § 1983, a defendant must be a "person." The Supreme Court held in *Will v. Michigan Dep't. of State Police*, 491 U.S. 58 (1989), that a State or an official of a State acting in his or her official capacity is not a "person" within the meaning of § 1983. A § 1983 claim does not apply to the United States because the United States has not consented to be sued under § 1983. *See Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001). *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics* is the federal corollary to § 1983. *See* 403 U.S. 388, 410 (1971). However, even if Plaintiff's claims were construed as arising under *Bivens*, they would still fail against the United States because "[t]he purpose of *Bivens* is to deter *individual federal officers* from committing constitutional violations." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001) (emphasis added); *see Albert v. Yost*, 431 F. App'x 76, 81 (3d Cir. 2001) ("A *Bivens* claim can be maintained only against individual federal officers, not against a federal entity.").

Here, the United States has not waived its sovereign immunity for claims brought under either § 1983 or *Bivens*, nor have any individual federal officers been named. Therefore, because the United States is not a "person" under either § 1983 or *Bivens*, and because the United States

has not waived its sovereign immunity, Plaintiff's claims Two, Three, Four, and Seven are dismissed with prejudice as to Defendant United States.

B. Plaintiff Has Not Asserted a Valid Claim under the Americans with Disabilities Act

In Count Five of the Complaint, Plaintiff asserts that Defendant United States violated Title II of the Americans with Disabilities Act. (*See* ECF No. 1 at 19-20.) Title II of the ADA "forbids discrimination against persons with disabilities in . . . public services, programs and activities[.]" *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004).

Although Plaintiff attempts to plead claims under Title II of the ADA against Defendant United States, it is well-settled that the ADA does not apply to the federal government, its agencies or employees. *See Smith v. Pallman,* 420 F. App'x 208, 214 (3d Cir. 2011); *see also, e.g., United States v. Wishart,* 146 F. App'x 171, 173 (9th Cir.2005) ("By definition, the ADA does not apply to the federal government."); *Luna v. Roche,* 89 F. App'x. 878, 881 n.4 (5th Cir. 2004) (same); *Dyrek v. Garvey,* 334 F.3d 590, 597 n.3 (7th Cir. 2003) (same); *Sarvis v. United States,* No. 99-0318, 2000 WL 1568230, at *2 (2d Cir. 2000) (same); *Whooten v. Bussanich,* No. 04-223, 2005 WL 2130016, at *7 (M.D. Pa. Sept. 2, 2005) (noting that the ADA does not contain a waiver of sovereign immunity so it does not apply to the federal government); *Wilson v. MVM, Inc.,* No. 03-4514, 2004 WL 765103, at *11 (E.D. Pa. Apr. 1, 2004) (noting that the ADA does not apply to any agency or branch of the federal government). Therefore, because the ADA does not apply to the federal government, its agencies or employees, Plaintiff's claim that Defendant United States violated Title II of the ADA is dismissed with prejudice.

C. Plaintiff's FTCA Claim Alleging Negligent Hiring, Training, Supervision and Retention of Employees against Defendant United States May Proceed

The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401(b), 2671-80, "operates as a limited waiver of the United States' sovereign immunity." *White-Square v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010). The FTCA allows claims against the United States for money damages

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

For the federal district courts to have jurisdiction over FTCA claims, plaintiffs must comply with a rather stringent exhaustion requirement. In order to properly present such a claim, a plaintiff must provide the agency at issue with written notification of the incident involved accompanied by a claim for money damages in a "sum certain." *Bruno v. U.S. Postal Serv.*, 264 F. App'x 248, 248 (3d Cir. 2008) (internal quotations omitted). The agency then must issue a final denial of said claim. *See McNeil v. United States*, 508 U.S. 106, 110-111 (1993). Because the requirements of presentation and a sum certain are among the terms defining the United States' consent to be sued, they are jurisdictional in nature and cannot be waived. *See White-Square*, 592 F.3d at 457 (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). It is the plaintiff's burden to persuade the court that he has complied with the FTCA's exhaustion requirement. *See McNeil*, 508 U.S. at 109.

In deciding a motion to dismiss, a court may (without converting the motion to one for summary judgment) properly look beyond the complaint to documents referenced in the

complaint or essential to a plaintiff's claim which are attached to a defendant's motion. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3rd Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). It appears reasonable to treat the documents offered by Defendants, i.e., Plaintiff's administrative claim form and Defendant's own denial letter, as documents upon which Plaintiffs' claims are based and therefore as properly considered on a motion to dismiss. *See In re Honeywell Int'l*, 2004 WL 3245931, at *1 (D.N.J. Sept. 14, 2004).

      Here, Defendant United States argues that Plaintiff did not meet the FTCA's exhaustion requirement with regards to his Count Six, i.e., Negligent Training, Hiring, Supervision, and Retention of prison personnel. (ECF No. 6-1 at 19-20.)  Defendant concedes that Plaintiff submitted a proper administrative claim to the Bureau of Prisons ("BOP"), and that it contained a discrete claim and a sum certain. (*Id*. at 20.) Defendants argue, however, that the facts asserted on the administrative claim form did not put BOP on notice of a potential claim for negligent hiring, training supervision or retention. (*Id*.) The claim made to the BOP states, in full, "[o]n January 21, 2013, claimant was in unite 5852 west side, taking a shower when he was struck in the head by an iron gate that had fallen from the wall." (ECF No. 6-2 at 11.) Defendants argue that this statement, with nothing more, was insufficient to put Defendant on notice that Plaintiff was raising a claim rooted in negligent supervision, training, hiring or retention. (ECF No. 6-1 at 20.) The Court agrees.

      A panel of the Third Circuit has held that an administrative tort claim alleging negligence and an administrative tort claim alleging negligent training or supervision are distinct and must be alleged separately for the District Court to have jurisdiction under the FTCA. *See Davila-*

*Bajana v. Sherman*, 278 F. App'x 91, 94 (3d Cir. 2008) ("Davila-Bajana . . . never initiated an administrative claim alleging negligent implementation of policy and/or employee training. Therefore, the District Court properly found that it lacked jurisdiction to hear this claim."). Therefore, because Plaintiff's administrative tort claim only alleged negligence, the Court lacks jurisdiction to hear Plaintiff's claim of negligent hiring, training, supervision or retention under the FTCA and Plaintiff's Count Six is dismissed with prejudice. *See Deutsch v. U.S.*, 67 F.3d 1080, 1091 (3d Cir. 1995); 28 U.S.C. §§ 2401(b), 2675(a).

D. The Court Must Dismiss Mrs. Coleman's Claim for Loss of Consortium with Prejudice

Plaintiff's wife, Tania Coleman, appends to Plaintiff's complaint a claim for loss of consortium as Count Eight. (*See* ECF No. 1 at 8.) A loss of consortium, or *per quod*, claim is intended to compensate a person for the loss of a spouse's "society, companionship and services due to the fault of another." *Wolfe v. State Farm Ins. Co.*, 540 A.2d 871 (N.J. Super. Ct. App. Div. 1987), *cert. denied*, 546 A.2d 562 (N.J. 1988). Although a *per quod* claim is derivative of the injured spouse's personal injury cause of action, "it is also independent, as the damages which may be awarded to the spouse pursuant to the *per quod* claim are clearly different from the damages which may be awarded to the spouse suffering the direct injury." *Kibble v. Weeks Dredging & Const. Co.*, 735 A.2d 1142, 1149 (N.J. 1999) (internal citations omitted). As such, "[e]ach claimant must submit an independent and separate claim to the appropriate administrative agency for review and possible settlement." *Commonwealth of Pa. v. Nat'l Ass. of Flood Ins.*, 520 F.2d 11, 23 (3d Cir. 1975).

In his Reply, Plaintiff argues that *Milacci v. Mato Realty Co., Inc.* stands for the proposition that "no separate administrative claim [is] required" for Mrs. Coleman's *per quod* claim. (ECF No. 13 at 16.); *see also* 525 A.2d 1120 (N.J. Super. Ct. App. Div. May 7, 1987).

9

However, at least one court in this Districthas held that "[t]his argument is unavailing as *Milacci* relates to the New Jersey Tort Claims Act … not the FTCA." *Santiago v. United States*, 2011 WL 4073865, at *3 (D.N.J. Sept. 13, 2011) (internal citations omitted). Because New Jersey law treats loss of consortium and personal injury, though related, as separate and distinct entities, *see Hauck v. Danclar*, 620 A.2d 479 (N.J. Super. Ct. Law Div. Jan. 15, 1993), Mrs. Coleman needed to exhaust her own administrative remedies before filing a claim under the FTCA. *See Bialowas v. United States*, 443 F.2d 1047, 1048-49 (3d Cir. 1971); *see also Ferguson v. U.S.*, 793 F.Supp. 107, 110 (E.D. Pa 1992). Therefore, because Mrs. Coleman did not exhaust her administrative remedies under the FTCA, her *per quod* claim is dismissed with prejudice.

E. Count One is Dismissed without Prejudice for Failure to State a Claim upon Which Relief May be Granted

Defendant next argues that Plaintiff's Count One, negligence, must be dismissed for failure to state a claim upon which relief may be granted pursuant to FED. R. CIV. P. 12(b)(6). (ECF No. 6-1 at 26.) Defendant argues in its motion that Count One of Plaintiff's Complaint "merely contains conclusory allegations," and thus does not support a cognizable cause of action. (*Id*.) Because Defendant's alleged negligence occurred in New Jersey, New Jersey tort law applies to Plaintiff's claim under the FTCA. *Ciccarone v. United States*, 486 F.2d 253, 257 (3d Cir. 1973). In order to establish negligence in New Jersey, Plaintiff must show, among other things, that Defendant breached a duty of care owed to Plaintiff. *Jersey Cent. Power & Light Co. v. Melcar Utility Co.*, 59 A.2d 561, 571 (N.J. 2013). To demonstrate that the BOP breached its duty of care, Plaintiff must show that the BOP employees had actual or constructive notice of the alleged dangerous condition. *See Nisivoccia v. Glass Gardens, Inc.*, 818 A.2d 314 (N.J. 2003).

Here, Defendant points to the lack of evidence that the BOP had actual or constructive notice of the alleged condition of the vent as reason for dismissal of the claim. Defendant is correct. Plaintiff's Complaint is devoid of any allegations that BOP employees knew that the vent which fell onto Plaintiff's head was in some dangerous condition. The Complaint also does not aver that, in the exercise of reasonable case, the BOP employees should have discovered the alleged hazard and/or that based on a pattern of past incidents, they should have known that the existence of the hazard was probable. *See Bozza v. Vornado*, 200 A.2d 777 (N.J. 1964); *see also Kolos v. United States*, 2009 WL 983030, at *3 (D.N.J. Apr. 13, 2009) (ruling for defendant post office when plaintiff presented no evidence of actual or constructive notice of dangerous condition on part of post office employees in FTCA negligence action). Plaintiff merely pleads that "Defendant … [was] negligent, careless and reckless by failing to maintain its property . . . ." (ECF No. 1 at 14.) Therefore, because Plaintiff's claim of negligence rests on "naked assertions" and mere "labels and conclusions," Plaintiff's Count One is dismissed without prejudice for failure to state a claim upon which relief can be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* FED. R. CIV. P. §§ 8(a), 12(b)(6); *Wilson v. City of Philadelphia*, 415 F. App'x 434, 436 (3d Cir. 2011) (holding that, post-*Iqbal*, a "more exacting scrutiny" is required of civil rights complaints).

## V. JANE AND JOHN DOES

Plaintiff names in the body of his complaint the following parties: Lt. Kennar, Lt. Kael, Lt. Monticello, Estella Richardson, Ms. Parker, James Gibbs, Cindy Dudley, Nicoletta Turner-Foster, R. Newland, Officer Echersin, Officer Archibald, and Mohammad Moubarek, M.D. (*See* ECF No. 1 at 4-6.) However, the caption of Plaintiff's Complaint only lists the United States and Jane and John Does as defendants. Thus, claims against the above-mentioned parties are not

presently before the Court as none of them have been served with summonses. Plaintiff should note, if he wishes to amend his Complaint and serve the parties named in the body of the Complaint, he must do so pursuant to the dictates of FED. R. CIV. P. 4(m).

## VI. CONCLUSION

For the foregoing reasons, Defendant's motion is granted. Plaintiff's Counts Two, Three, Four, Five, Six, Seven, and Eight are dismissed with prejudice as to Defendant United States. Plaintiff's Count One is dismissed without prejudice as to Defendant United States. For Plaintiff's claim that was dismissed without prejudice, Plaintiff may file an amended complaint with the Court within thirty (30) days of the signing of this Opinion. Should plaintiff's amended complaint name defendants who were not previously named as defendants and served with the original complaint, plaintiff shall serve those parties with the amended complaint pursuant to the dictates of Federal Rule of Civil Procedure 4(m). An appropriate order will follow.


DATED:                                               _____
                                                     ROBERT B. KUGLER
                                                     United States District Judge