# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

DAVID R. COLEMAN, et al.,            :

                              :

             Plaintiffs,          :        Civ. No. 15-1942 (RBK) (AMD)

                              :

            v.                    :

                              :

UNITED STATES OF AMERICA,     :        **OPINION**

                              :

            Defendants.       :

_____ :

## ROBERT B. KUGLER, U.S.D.J.

## I.      INTRODUCTION

Plaintiffs, David R. Coleman and his wife Talia Coleman, are proceeding through counsel with second amended civil rights complaint.[1] Mr. Coleman was previously incarcerated as an inmate at F.C.I. Fort Dix in Fort Dix. New Jersey and at F.C.I. Cumberland, in Cumberland, Maryland. Presently pending before this Court are two motions to dismiss. The first motion to dismiss is filed by defendant Mohammad Moubarek. He seeks dismissal of the second amended complaint against him for lack of personal jurisdiction. Plaintiffs do not oppose this motion to dismiss. It will be granted. The second pending motion is a motion to dismiss filed by defendants the Estate of Lieutenant Corey J. Kaough, James Gibbs, PA,[2] Lieutenant Kennar,

---

[1] While the caption of the second amended complaint names Talia Coleman as a plaintiff, she is not named anywhere in the body of the complaint. Indeed, the allegations of the complaint center upon the circumstances of Mr. Coleman while he was incarcerated. Therefore, where applicable this Court will refer to the factual allegations as Mr. Coleman's, rather than as plaintiffs'.

[2] The second amended complaint spells this defendant's last name as Gibbs. However, defendants spell this defendant's last name as Gibb in their motion. For purposes of this opinion, this Court will use the spelling of this defendant as named in the second amended complaint, Gibbs.

Nicoletta Turner-Foster, MD, R. Newland, MD and Officer Reyes. For the following reasons, that motion will be granted in part and denied in part

## II.     BACKGROUND

The factual allegations of the second amended complaint will be construed as true for purposes of this opinion. On January 21, 2013, while incarcerated at F.C.I. Fort Dix, Mr. Coleman was taking a shower when he was struck in the head and knocked unconscious by an iron/metal grate that is used to cover a vent on the wall in the shower cubicle. This caused a laceration and heavy bleeding. Mr. Coleman was transported to the on-duty Lieutenant's office, Kennar. Kennar did not provide medical treatment to Mr. Coleman. Instead, Mr. Coleman was "slammed up against a wall and handcuffed to a chair for hours" until two nurses arrived in the morning. (*See* Dkt. No. 21 at p.8) At that time, Mr. Coleman was escorted to the Health Service Unit "(HSU)". He was diagnosed with a concussion, administered Tylenol and instructed to return to his housing unit.

Mr. Coleman continued to experience headaches upon returning to his unit. He was eventually sent back to the HSU for another evaluation. As a result of this second evaluation, Mr. Coleman was transferred to St. Francis Medical Center ("SFMC"). He was diagnosed with a concussion post head trauma, headache, C-6 spine fracture and neck pain. Mr. Coleman remained hospitalized for four days. He was discharged on January 25, 2013 and given a prescription for Decadron to control cerebral and cervical swelling. He was instructed to use a cervical collar until seen by neurosurgery.

Upon returning to F.C.I. Fort Dix, Mr. Coleman was advised by defendant Gibbs that Decadron was not available and that he did not know when he could obtain in. Upon returning to the prison, Mr. Coleman had difficulty moving his right arm and leg. On January 26, 2013,

Gibbs received a radio call that Mr. Coleman could not move the right side of his body. Gibbs examined Mr. Coleman and he was instructed to delete the prescription for Decadron and begin a regiment of 15 milligrams of prednisone BID for five days.

On January 27, 2013, Gibbs received another radio call that Mr. Coleman was unable to move the right side of his body. Gibbs and other officers went to Mr. Coleman's cell. Mr. Coleman was strapped to a stretcher and transported to defendant Kaough's office. Upon seeing Mr. Coleman, Kaough stated that, "it can't be that serious." (Dkt. No. 21 at p. 10) Kaough said that since Mr. Coleman did not want to walk, he would be placed in the SHU. Another officer mentioned that he had found a shank underneath Mr. Coleman's locker. Kaough then stated, "Yeah, we can go all the way too, write it up and we can take all his good time." (Dkt. No. 21 at p.11)

Mr. Coleman was then charged with possession of a weapon and transported to the SHU by Gibbs. Mr. Coleman was thrown onto a bare mat on the floor in his SHU cell. According to Mr. Coleman, he "was left lying in excruciating pain drenched in his own urine, saliva and vomit on the floor of the cell, crying and yelling for medical attention for more than thirteen (13) hours with no response. [He] was left laying on his back unable to get up." (Dkt. No. 21 at p.11)

At 7:00 a.m. the next morning, Mr. Coleman was removed from the SHU and transported to SFMC. He was admitted for four days from January 28, 2013 until January 31, 2013. He was diagnosed with blunt trauma to the head, deformity of the cervical 5th vertebrae and weakness of the right arm and leg. Upon being released from the hospital on January 31, 2013, it was recommended that Mr. Coleman continue with Decadron, use a cervical collar and undergo physical therapy.

Mr. Coleman was placed back in the SHU until March 21, 2013. He went days without medication. Mr. Coleman was also given the wrong medication during this time which caused an allergic reaction. Mr. Coleman was also chained while showering.

On June 25, 2013, Mr. Coleman was found unresponsive in his wheelchair. He was again transported to SFMC. He remained there until June 28, 2013. Mr. Coleman was diagnosed with a change in seizure disorder possibly due to grand mal seizure and functional weakness of the right hand. On June 29, 2013, Mr. Coleman was again transported to SFMC. An EEG was found to be consistent with a seizure disorder. Mr. Coleman remained at SFMC for seven days. Physical therapy was recommended when he was released from the hospital.

On July 6, 2013, Mr. Coleman woke up in a room wearing nothing but a smock. The room was infested with cockroaches and spiders. Mr. Coleman had bruises and scratches on his body. He was not responsive so a task force was used to remove him from his cell.

While Mr. Coleman was recommended by defendant Turner-Foster to be transferred to a facility that offered physical therapy, he was never provided physical therapy. Ultimately, Mr. Coleman was transferred to F.C.I. Cumberland where he again was not given physical therapy.

Mr. Coleman's health continues to decline. He experiences seizures, head and neck pain and needs to use a cane.

Mr. Coleman raises several claims in the second amended complaint. In Count I, Mr. Coleman brings a negligence claim against the Unites States. In Count II, Mr. Coleman brings an Eighth Amendment deliberate indifference to his serious medical needs claim against defendants Kennar, Kaough, Gibbs, Turner-Foster, Newland, Moubarek, Reyes and John Doe physicians and nurses. He claims that:

> Defendants failed to conduct a complete and thorough physical examination of Plaintiff immediately following his injury which

> would have revealed the severity of Plaintiff's injuries and the
> necessity to promptly transfer Plaintiff to a hospital for further
> care; failed to provide emergent medical care to Plaintiff; failed to
> provide proper, adequate medical treatment to Plaintiff, including,
> but not limited to immediate transportation to the hospital for a
> complete and thorough physical examination; and failed to provide
> prescribed followup care, including but not limited to physical
> therapy and medication to control cerebral and cervical swelling.

(Dkt. No. 21 at p.18)

In Count III, Mr. Coleman raises a cruel and unusual punishment claim. Count IV asserts an excessive force claim against Kennar, Kaough, Gibbs, Reyes and John Does. Finally, in Count V, Mr. Coleman asserts a conspiracy claim against Kennar, Kaough, Gibbs, Turner-Foster, Newland, Moubarek, Reyes and John Does.

### III.    DISCUSSION

A. <u>Defendant Moubarek's Motion to Dismiss for Lack of Personal Jurisdiction</u>

Defendant Moubarek is employed at F.C.I. Cumberland, in Cumberland, Maryland. He has moved to dismiss the second amended complaint against him for lack of personal jurisdiction. Plaintiffs have stated that they do not have a valid challenge to Moubarek's motion to dismiss for lack of personal jurisdiction. (*See* Dkt. No. 35)

When a defendant raises a personal jurisdictional objection, the plaintiff bears the burden of showing that jurisdiction is proper. *See Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir. 1992); *see also Bootay v. KBR, Inc.*, 437 F. App'x 140, 143 (3d Cir. 2011). A plaintiff meets this burden by presenting a prima facie case for the exercise of personal jurisdiction, which requires that he or she establish "with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank*, 960 F.2d at 1223 (citing *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n,* 819 F.2d 434 (3d Cir. 1987)). It is insufficient to rely on the pleadings alone; rather a plaintiff must establish facts relevant to

personal jurisdiction by affidavits or other competent evidence. *See Patterson v. Fed. Bureau of Investigation,* 893 F.2d 595, 603–04 (3d Cir. 1990) (quoting *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 67 n. 9 (3d Cir. 1984)). "Because Bivens suits are suits against government officials in their individual - rather than official - capacities, personal jurisdiction over each defendant is necessary." *Paz v. Hughes*, No. 15-1846, 2016 WL 6276397, at *2 (E.D. Pa. Oct. 27, 2016) (citing *Zieper v. Reno*, 111 F. Supp. 2d 484, 491 (D.N.J. 2000)).

> The federal district courts in New Jersey may assert personal jurisdiction over a nonresident only to the extent authorized by state law. *Eurofins* [*Pharma US Holdings v. BioAllaince Pharma SA,* 623 F.3d [147,] 155 [(3d Cir. 2010)]. We have recognized that "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 96 (3d Cir. 2004) (citation omitted). In keeping with "traditional notions of fair play and substantial justice," *J. McIntyre Mach., Ltd. v. Nicastro,* – U.S. –, 131 S. Ct. 2780, 2787, 180 L. Ed. 2d 765 (2011) (citation and internal quotations omitted), due process permits that "parties who have constitutionally sufficient minimum contacts with New Jersey are subject to suit there." *Miller Yacht Sales,* 384 F.3d at 96 (internal quotations omitted).
>
> Two brands of personal jurisdiction, viz., "minimum contacts," adhere to those due process principles. The first brand—general jurisdiction—exists "when a defendant has maintained systematic and continuous contacts with the forum state." *Kehm Oil Co. v. Texaco, Inc.,* 537 F.3d 290, 300 (3d Cir. 2008). And the second brand—specific jurisdiction—exists "when the claim arises from or relates to conduct purposely directed at the forum state." *Id.*; *see also Asahi Metal Indus., Ltd. v. Superior Court of California, Solano Cnty.,* 480 U.S. 102, 109, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) ("minimum contacts must have a basis in some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws") (internal quotations and citation omitted).

*Boyd v. Arizona*, 469 F. App'x 92, 97 (3d Cir. 2012).

This Court agrees with Moubarek that plaintiffs have failed to establish either general or specific personal jurisdiction over him. Indeed, plaintiffs concede as much in their letter indicating that they are not filing a response in opposition to Moubarek's motion. The second amended complaint acknowledges that F.C.I. Cumberland is in Maryland. The second amended complaint does not allege allegations that tie Moubarek to New Jersey. Furthermore, Moubarek's declaration indicates that he does not reside in New Jersey, work in New Jersey or own any real property in New Jersey. Plaintiffs have not filed anything in response to counter Moubarek's declaration. Therefore, this Court will grant Moubarek's motion to dismiss the second amended complaint against him for lack of personal jurisdiction.

B. Defendants Kennar, Estate of Kaough, Gibbs, Turner-Foster, Newland & Reyes' Motion to Dimsiss

Defendants the Estate of Kaough, Turner-Foster, Newland, Reyes, Kennar and Gibbs, have also filed a motion dismiss the second amended complaint. These defendants make several arguments in their motion. Each will be considered in turn.

i.  *Estate of Kaough & Lack of Service*

The Estate of Corey J. Kaough seeks dismissal of this action against him because it was not timely served with process.

> Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of summons must be satisfied." *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Under Rule 12(b)(4), Fed. R. Civ. P., a party may file a motion asserting insufficient process as a defense. Additionally, under Rule 12(b)(5), Fed. R. Civ. P., a party may file a motion asserting insufficient service of process as a defense. "When a party moves to dismiss under Rule 12(b)(5), the party making the service has the burden of demonstrating its validity." *Laffey v. Plousis*, No. 05-2796, 2008 WL 305289, at *3 (D.N.J. Feb. 1, 2008), *aff'd*, 364 F. App'x 791 (3d Cir. 2010).

*Anderson v. ZFC Legal Title Trust I*, No. 16-1499, 2016 WL 7408846, at *2 (D.N.J. Dec. 22, 2016).

Summonses were issued for the second amended complaint on July 12, 2016. Plaintiffs then had ninety days in which to serve the Estate of Kaough under Federal Rule of Civil Procedure 4(m). It does not appear that the Estate was served. Nevertheless, plaintiffs assert that the second amended complaint should not be dismissed against the Estate of Kaough. Plaintiffs first argue that the United States did not file a statement of Kaough's death pursuant to Federal Rule of Civil Procedure 25. Second, plaintiffs assert that the United States did not give them information to assist in effectuating service against the Estate of Kaough.

Federal Rule of Civil Procedure 25(a) states as follows:

> (1) *Substitution if the Claim Is Not Extinguished.* If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

> (2) *Continuation Among the Remaining Parties.* After a party's death, if the right sought to be enforced survives only to or against the remaining parties, the action does not abate, but proceeds in favor of or against the remaining parties. The death should be noted on the record.

> (3) *Service.* A motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4. A statement noting death must be served in the same manner. Service may be made in any judicial district.

FED. R. CIV. P. 25(a). However, Rule 25 "presupposes that substitution is for someone who was a party to a pending action. Substitution is not possible if one who was named as a party in fact died before the commencement of the action." 7C CHARLES ALAN WRIGHT, ET AL., FED. PRAC. & PROC. § 1951 (3d ed.) (footnotes omitted). Plaintiffs commenced this action by filing their

original complaint in March, 2015. (*See* Dkt. No. 1) That complaint only named the United States as a defendant. It was not until plaintiffs submitted their first and second amended complaint in 2016 that they named Kaough.[3]

Defendants included a notice of Kaough's obituary which is dated August, 30, 2014. This is well before plaintiffs submitted their original complaint. Therefore, plaintiffs' reliance on Rule 25 to oppose the dismissal of the Estate of Kaough is misplaced because Kaough died before the plaintiffs commenced this action. *Accord Jenkins v. South Carolina Dep't of Corr.*, NO. 09-3293, 2010 WL 4609115, at *1 (D.S.C. Aug. 25, 2010) (substitution of party under Rule 25 not appropriate where defendant died prior to commencement of action), *report and recommendation adopted by*, 2010 WL 4622510 (D.S.C. Nov. 4, 2010).

Plaintiffs also argue that they have not been provided with Kaough's next of kin that would allow them to either: (1) serve process on the estate; or (2) move to substitute the estate as a party. (*See* Dkt. No. 39 at p.22) However, a defendant is under no obligation under Federal Rule of Civil Procedure 4 to disclose how to effect service of process upon it. *See Cain v. Abraxas*, 209 F. App'x 94, 96-97 (3d Cir. 2006). It is also worth noting that plaintiff did not request an extension of time to serve process on the Estate. Therefore, this Court will dismiss the second amended complaint against the Estate of Kaough without prejudice for failure to serve.

ii.    *Turner-Foster, Newland & Reyes*

Defendants Turner-Foster, Newland and Reyes assert that the second amended complaint should be dismissed against them for failure to state a claim. More specifically, these three defendants assert that the second amended complaint should be dismissed because plaintiffs have failed to allege their personal involvement. Mr. Coleman raises a deliberate indifference to his

---

[3] The first amended complaint named Lt. Kael, whereas the second amended complaint named the Estate of Kaough as a defendant.

serious medical needs and conspiracy claims against these three defendants. Additionally, he brings his excessive force claim against Reyes. Mr. Coleman may also be asserting his cruel and unusual punishment claim against these three defendants.[4]

Because these three defendants assert that the second amended complaint should be dismissed against them for failure to state a claim, it is important to first state the relevant standard in determining whether a complaint should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

a.  Legal Standard on Motion to Dismiss for Failure to State a Claim Raised under *Bivens*

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss, a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Worth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("reasonable inferences" principle not undermined by later Supreme Court *Twombly case, infra*).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiffs obligation to provide the 'grounds' of his "entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[4] Unlike his other claims where Mr. Coleman specifically names which defendants he is suing under each claim, Mr. Coleman fails to do so in his cruel and unusual punishment claim.

Thus, the factual allegations must be sufficient to raise a plaintiffs right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678 (2009).

*Bivens* is the federal counterpart to 42 U.S.C. § 1983. *See Walker v. Zenk*, 323 F. App'x 144, 145 n.1 (3d Cir. 2009) (citing *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004)). In order to state a claim under *Bivens*, a plaintiff must allege: (1) a deprivation of a right secured by the Constitution or laws of the United States; and (2) that the deprivation of the right was caused by a person acting under color of federal law. *See Couden v. Duffy*, 446 F.3d 483, 491 (3d Cir. 2006) (stating that under Section 1983 "an individual may bring suit for damages against any person who, acting under color of state law, deprives another individual of any rights, privileges, or immunities secured by the United States Constitution or federal law," and that Bivens held that a parallel right exists against federal officials); *see also Collins v. F.B.I.*, No. 10–3470, 2011 WL 1627025, at *6 (D.N.J. Apr. 28, 2011) ("The Third Circuit has recognized that Bivens actions are simply the federal counterpart to § 1983 claims brought against state officials' and thus the analysis established under one type of claim is applicable under the other.") (internal quotation marks and citations omitted). "In order for liability to attach under [*Bivens*], a plaintiff must show that a defendant was personally involved in the deprivation of his federal rights." *Fears v. Beard*, 532 F. App's 78, 81 (3d Cir. 2013) (citing *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "[L]iability cannot be predicated solely on the operation of respondeat

superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citation omitted).

> b. Analysis

As to defendant Turner-Foster, the second amended complaint names her as a defendant in paragraph fifteen. Thereafter, the pleading names her again in paragraph forty-three by stating that:

> Despite the recommendations of the treating physician at SFMC that Plaintiff undergo physical therapy and the numerous requests and recommendations by Turner-Foster that Plaintiff be transferred to a facility which offers physical therapy, Defendants failed to provide Plaintiff with the recommended physical therapy. As a result, Plaintiff continued to suffer in excruciating pain and remained confined to a wheelchair for well over a year and a half unable to move his lower extremities.

(Dkt. No. 21 at p.13) This is the only non-conclusory factual allegation in the second amended complaint against Turner-Foster and only relates to Mr. Coleman's medical care claim. With respect to Mr. Coleman's medical care claim against Turner-Foster, it is worth noting that

> For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). We have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular

> course of treatment ... (which) remains a question of sound
> professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*,
> 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551
> F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or
> medical malpractice do not trigger constitutional protections.
> *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

*Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013). Deliberate indifference can also be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury." *See McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (quoting *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987))).

The above allegation against Turner-Foster does not allege that she was deliberately indifferent to Mr. Coleman's serious medical needs. Indeed, it shows that she recommended that he be transferred to a facility that offers physical therapy. Such an allegation does not rise to deliberate indifference to his serious medical needs.

Mr. Coleman's other allegations against Tuner-Foster are conclusory. Indeed, the second amended complaint alleges in conclusory fashion that she was deliberately indifferent to provide him adequate medical care. However, the second amended complaint is devoid of specific allegations that state with facial plausibility that Turner-Foster either: (1) knew of his need for medical treatment but intentionally refused to provide Mr. Coleman with such treatment; (2) delayed necessary medical treatment based on a non-medical reason; (3) prevented Mr. Coleman from receiving medical treatment; or (4) persisted in a course of treatment of Mr. Coleman in the face of resultant pain and risk of permanent injury.

Similarly, to the extent that Mr. Coleman alleges that Turner-Foster is liable under his cruel and unusual punishment claim as well as his conspiracy claim, his allegations against her are also conclusory and fail to state a claim under either Count under the *Iqbal* standard. For example, in his conspiracy claim, he alleges that Turner-Foster (along with others):

> conspired, reached a mutual understanding, and acted to undertake a course of conduct to injure, oppress, psychologically torment, threaten, falsely imprison, deny medical treatment and intimate Plaintiff in the free exercise and enjoyment of the rights and privileges and equal protection of the law secured to him by the United States Constitution, including, but not limited to the rights to be free from cruel and unusual punishment; to be free from the delay an denial of medical attention; and to be free from unnecessary and wanton infliction of pain.

> Defendants too numerous overt steps in furtherance of such conspiracy, as set forth above.

> Defendants conspired to commit the horrific acts visited upon Plaintiff, gaining knowledge of the plan and observing its occurrence, and further conspired to protect the actual individuals committing the physical and psychological offenses and keep confidential the plan, conspiracy and conduct of all involved employees and officers.

(Dkt. No. 21 at p.22-23.

The elements of a civil conspiracy claim under § 1983 are:

> a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.

*Adams v. Teamsters*, 214 F. App'x 167, 172 (3d Cir. 2007) (quoting *Hampton v. Hanrahan*, 600 F.2d 600, 620-21 (7th Cir. 1979)) (quoting *Rotermund v. U.S. Steel Corp.*, 474 F.2d 1139 (8th Cir. 1973) (quotation marks omitted)). However, nowhere in the second amended complaint beyond his conclusory allegations does Mr. Coleman show with facial plausibility that Turner-

Foster should be liable to him for conspiracy. Mr. Coleman's allegations against her for cruel and unusual punishment (to the extend he intends to bring such a claim against her) are also conclusory and fail to state a claim.[5] Therefore, the claims against Turner-Foster will be dismissed without prejudice.

Mr. Coleman has even less factual allegations against Newland and Reyes than he did for Turner-Foster. Indeed, besides naming them as defendants, Mr. Coleman's allegations against these two defendants are limited to conclusory statements in his second amended complaint. Thus, his claims against Newland and Reyes suffer from a similar fate as did his claims against Turner-Foster. His conclusory allegations without any allegations alleging facial plausibility are insufficient to state a claim under Rule 12(b)(6). Therefore, the claims against Newland and Reyes will also be dismissed without prejudice.

      *iii.*       *Deliberate Indifference to his Serious Medical Needs Claim*

The remaining defendants in the motion are defendants Kennar and Gibbs having now dismissed the claims against Turner-Foster, Newland and Reyes. They argue that Mr. Coleman has failed to state a deliberate indifference to his medical needs claim against them. However, this Court disagrees.

The relevant standard to sufficiently state a deliberate indifference to a serious medical need claim was discussed in *supra* Part III.B.ii.b. Mr. Coleman notified Kennar on January 21, 2013 that he needed treatment for his laceration and heavy bleeding that had just occurred. However, despite being notified of this, Mr. Coleman was handcuffed to a chair outside of Kennar's office for hours until Ms. Richardson and Ms. Parker arrived the next morning. These

---

[5] The relevant elements to state a claim for cruel and unusual punishment are described *infra* Part III.B.iv. However, there are simply no plausible factual allegations against Turner-Foster. His conclusory allegations are insufficient to state a claim under Rule 12(b)(6).

allegations are sufficient to state a claim because Kennar either knew of Mr. Coleman's need for medical care but intentionally refused to provide it and/or delayed Mr. Coleman's necessary medical care for a non-medical reason and/or prevented Mr. Coleman from receiving medical treatment. Therefore, the deliberate indifference to Mr. Coleman's medical needs claim will not be dismissed against Kennar.

This Court also will not dismiss Mr. Coleman's deliberate indifference to his serious medical needs claim against Gibbs. Of particular concern to this Court are Mr. Coleman's allegations with respect to his second evaluation that occurred on January 27, 2013. Mr. Coleman alleges that he could not move the right side of his body to get out of bed due to the pain on that day. Despite this purported knowledge, Gibbs ultimately transported Mr. Coleman to the SHU. One day later, Mr. Coleman was admitted to the hospital where he was diagnosed with injuries such as blunt trauma to the head and deformity of the cervical fifth vertebrae. Despite Gibbs purportedly having knowledge of Mr. Coleman's symptoms, he was an active participant *with knowledge* of Mr. Coleman's medical conditions, yet he put Mr. Coleman in the SHU initially, rather than attempting to get him medical care. Allegations such as these could give rise to a deliberate indifference claim against Gibbs. Therefore, this claim will also not be dismissed against Gibbs.

     iv.   *Cruel and Unusual Punishment Claim*

Defendants Kennar and Gibbs also argue that Mr. Coleman's cruel and unusual punishment claim should be dismissed for failure to state a claim. The cruel and unusual punishment claim arises from Mr. Coleman's placement in the SHU while incarcerated at F.C.I. Fort Dix.[6]

---

[6] This Court construes this claim as separate and apart from Mr. Coleman's deliberate indifference to his serious medical needs claim that was discussed in the previous section.

The Eighth Amendment protects prison inmates from cruel and unusual punishment. *See, e.g., Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994). Not all deficiencies and inadequacies in prison conditions, however, amount to a violation of a prisoner's constitutional rights. *See Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S. Ct. 2392, 69 L.Ed.2d 59 (1981). To assert an Eighth Amendment conditions of confinement claim, a prisoner must satisfy both an objective and subjective test. *See Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Specifically, a prisoner must show that the alleged deprivation is sufficiently serious and that he has been deprived of the "minimal civilized measure of life's necessities," such as food, clothing, shelter, sanitation, medical care, or personal safety. *Farmer,* 511 U.S. at 834 (quoting *Rhodes,* 452 U.S. at 347). Only "extreme deprivations," however, are sufficient to present a claim for unconstitutional conditions of confinement. *Hudson v. McMillian,* 503 U.S. 1, 8–9, 112 S. Ct. 995, 117 L.Ed.2d 156 (1992).

The practice of housing certain prisoners in isolation from other inmates is not a condition of confinement that violates the Eighth Amendment. Solitary confinement in and of itself does not violate Eighth Amendment prohibitions, and the temporary inconveniences and discomforts incident thereto cannot be regarded as a basis for judicial relief. *Ford v. Bd. of Managers of N.J. State Prison,* 407 F.2d 937, 940 (3d Cir. 1969) (footnote omitted); *see also Washington–El v. Beard,* No. 08–1688, 2011 WL 891250, at *3 (W.D. Pa. Mar.11, 2011). Neither classification nor confinement to segregation, either administrative or punitive, implicates the Cruel and Unusual Punishment Clause of the Eighth Amendment unless the conditions themselves are cruel and unusual. *Hutto v. Finney,* 437 U.S. 678, 686, 98 S. Ct. 2565, 57 L.Ed.2d 522 (1978).

*Rosario v. Williams*, No. 13-1945, 2014 WL 338114, at *7 (E.D. Pa. Jan. 29, 2014).

In addition to needing to plead that he has been deprived of the minimal civilized measure of life necessities, a plaintiff must demonstrate deliberate indifference to prison conditions on the part of prison officials. *See Farmer*, 511 U.S. at 833. This requires a

---

Indeed, this Court construes the allegations as attempting to raise a conditions of confinement claim while he was incarcerated in the SHU.

determination of whether Mr. Coleman has pled that Kennar and Gibbs acted with a sufficiently culpable state of mind.

The second amended complaint fails to state a conditions of confinement Eighth Amendment claim against Kennar and Gibbs. In terms of the specific conditions of confinement alleged (separate and apart from the denial of medical care which will proceed against Kennar and Gibbs), Mr. Coleman alleges that Gibbs threw him on a bare mat in the SHU where he stayed for thirteen hours.[7] Later on in the second amended complaint, Mr. Coleman states that on July 6, 2013, he awoke in a smock in a room with cockroaches and spiders.

As to the first allegation, this Court finds that thirteen hours placement in a cell that had a mat does not rise to the level of cruel and unusual punishment. *See Wilson*, 501 U.S. at 298 (the Constitution does not mandate comfortable prisons). As to Mr. Coleman's allegations regarding being in a cell on July 6, 2013 infested with cockroaches and spiders, this allegation also is insufficient to state a claim against Kennar and Gibbs. The second amended complaint fails to allege personal involvement of either of these two defendants with respect to that particular condition of confinement. Therefore, it is unnecessary to determine whether such conditions would sufficiently state a cruel and unusual punishment claim against either of these two defendants.

Accordingly, the cruel and unusual punishment claim which this Court has construed as a condition of confinement claim against Kennar and Gibbs will be dismissed without prejudice for failure to state a claim.

---

[7] Mr. Coleman alleges that during this thirteen hours he was left in excruciating pain drenched in his own urine, saliva and vomit on the cell. This goes to Mr. Coleman's deliberate indifference claim against Gibbs which this Court has already determined will proceed as opposed to the actual conditions of the SHU cell.

v.    *Excessive Force Claim*

Mr. Coleman has also raised an excessive force claim against Kennar and Gibbs. This claim appears to be based on three separate incidents as alleged in the second amended complaint. First, Mr. Coleman alleges that on January 21, 2013, he was slammed against a wall and handcuffed to a chair for hours outside of Kennar's office. (*See* Dkt. No. 21 at p.8-9) Second, Mr. Coleman alleges that on January 27, 2013, Gibbs threw him onto a bare mat that was lying in the floor in the SHU. (*See id.* at p.11) Finally, Mr. Coleman complains about how a task force was used to remove him from his cell on July 6, 2013.

> The Eighth Amendment protects inmates from the "wanton and unnecessary infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 320, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986). When examining Eighth Amendment excessive force cases, courts generally afford prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 321-22, 106 S. Ct. 1078 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). . . .
>
> "In an excessive force claim, the central question is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley*, 475 U.S. at 327, 106 S. Ct. 1078). In weighing these issues, we look to the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, the extent of the threat to the safety of prison staff and inmates—as reasonably perceived by prison officials on the facts known to them, and any efforts made to temper the severity of a forceful response. *Brooks*, 204 F.3d at 106.

*Conklin v. Hale*, No. 16-1181, 2017 WL 680343, at *1 (3d Cir. Feb. 21, 2017).

With respect to the first incident, there appear to be two separate allegations regarding excessive force: (1) being slammed against a wall; and (2) being handcuffed to a chair for hours. With respect to being slammed against a wall on January 21, 2013, Mr. Coleman fails to state an

excessive force claim against Kennar and Gibbs because he does not allege either of their specific personal involvement in this particular use of this force. Instead, the second amended complaint does not name the individual responsible for this use of force.

Mr. Coleman's handcuffing allegations on January 21, 2013 also are insufficient to state an excessive force claim. For example, Mr. Coleman does not allege that he requested that the handcuffs be loosened. Furthermore, he does not allege that he suffered injury or sought medical attention as a result of the handcuffs. The complaint does not allege that he was handcuffed by Kennar or Gibbs maliciously or sadistically to cause harm. At best, this handcuffing incident constitutes a minimal use of force that is insufficient to state an excessive force claim as alleged. *See Hudson,* 503 U.S. at 10 ("The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.") (internal quotation marks and citations omitted); *see also Fears,* 532 F. App'x at 82 (affirming district court's grant of summary judgment in favor of defendant where plaintiff's allegations that defendant used excessive force by handcuffing him only established a *de minimis* use of force which is insufficient to state a claim under the Eighth Amendment); *Farha v. Silva,* No. 06–755, 2011 WL 674041, at *9 (E.D. Cal. Feb. 16, 2011) (plaintiff failed to state an Eighth Amendment claim due to overly tight handcuffs as "[t]here is no evidence that the handcuffing incident involved more than a *de minimis* use of force."), *report and recommendation adopted as modified on other grounds,* 2011 WL 1344563 (E.D. Cal. Apr. 8, 2011).

Next. Mr. Coleman complains about Gibbs throwing him into a room in the SHU where he was left lying on the floor. At the outset, this Court is mindful of the following:

> An inmate who complains of a "push or shove" that causes no
> discernible injury almost certainly fails to state a valid excessive

force claim. *Ibid.* (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)).

> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury. Accordingly, the Court concluded in *Hudson* that the supposedly "minor" nature of the injuries "provide[d] no basis for dismissal of [Hudson's] § 1983 claim" because "the blows directed at Hudson, which caused bruises, swelling, loosened teeth, and a cracked dental plate, are not *de minimis* for Eighth Amendment purposes." 503 U.S. at 10, 112 S.Ct. 995.

*Wilkins v. Gaddy*, 559 U.S. 34, 38, 130 S. Ct. 1175, 1178–79, 175 L. Ed. 2d 995 (2010).

With this as a background, this Court will not dismiss Mr. Coleman's excessive force clam against Gibbs as a result of this incident. Gibbs was previously informed that Mr. Coleman could not move the right side of his body. Despite this purported knowledge, Gibbs threw Mr. Coleman onto the mat on the floor of the SHU cell. Gibbs may have thrown Mr. Coleman into the cell malicious or sadistically to cause him harm given his knowledge of Mr. Coleman's physical condition. While not every push or shove constitutes excessive force, given this purported knowledge by Gibbs, Mr. Coleman has sufficiently stated an excessive force claim against Gibbs arising out of this incident.

Finally, Mr. Coleman asserts that the use of a task force team to remove him from his cell on July 6, 2013 constituted excessive force. However, without even deciding that such an allegation could rise to the level of excessive force, Mr. Coleman fails to allege that Kennar or Gibbs were involved in this extraction. Thus, he fails to allege their personal involvement which is necessary to sustain a § 1983 claim for excessive force against them. Accordingly, Mr. Coleman's excessive force claims against Kennar will be dismissed without prejudice for failure to state a claim. Mr. Coleman's excessive force claim against Gibbs will be dismissed without

prejudice only in part. Only Mr. Coleman's excessive force claim related to being thrown into

the SHU cell by Gibbs on January 27, 2013 will be permitted to proceed.

      vi.    *Conspiracy Claim*

      Plaintiff also attempts to allege a conspiracy claim against Kennar and Gibbs. This Court

previously outlined the elements of a civil conspiracy under § 1983 as follows:

> a combination of two or more persons acting in concert to commit
> an unlawful act, or to commit a lawful act by unlawful means, the
> principal element of which is an agreement between the parties to
> inflict a wrong against or injury upon another, and an overt act that
> results in damage.

*Adams*, 214 F. App'x at 172 (citations omitted).

      The second amended complaint fails to state a conspiracy claim against Kennar or Gibbs.

Mr. Coleman fails to allege with the required facial plausibility under *Iqbal* that Kennar entered

into an agreement with another person to commit an unlawful act. Indeed, while Mr. Coleman

has sufficiently alleged a denial of medical care claim against Kennar arising from the January

21, 2013 interaction, at no time in the second amended complaint does he allege with the

required facial plausibility under *Iqbal* that Kennar *entered into an agreement* with another

person to violate Mr. Coleman's rights. Rather, his allegations of a conspiracy, and more

specifically that Kennar entered into an agreement, are conclusory. Therefore, Mr. Coleman fails

to state a conspiracy claim against Kennar.

      Mr. Coleman's allegations of a conspiracy against Gibbs require more analysis. Indeed,

both Gibbs and Kaough were involved in the circumstances of Mr. Coleman not receiving

medical care on January 27, 2013 after he purportedly could not move the right side of his body.

Gibbs initially transported Mr. Coleman to Kaough on that day. Kaough then ordered Mr.

Coleman to the SHU. Gibbs then transported Mr. Coleman to the SHU. However, at no time in

the second amended complaint beyond conclusory allegations (which are insufficient under *Iqbal*) does Mr. Coleman allege that Gibbs and Kaough entered into an agreement to deny him medical care. Additionally, nowhere in the second amended complaint does Mr. Coleman allege with the required facial plausibility that Kaough and Gibbs conspired to use excessive force against him. Therefore, Mr. Coleman's conspiracy claim against Gibbs will also be dismissed without prejudice.

vii.    *Qualified Immunity*

Finally, defendants argue that they are entitled to qualified immunity. The only remaining claims of the second amended complaint are Mr. Coleman's deliberate indifference to his serious medical needs claim against Kennar and Gibbs as well as Mr. Coleman's excessive force claim against Gibbs when he was thrown into the SHU cell. Therefore, this Court will limit its discussion to determine whether Kennar and/or Gibbs are entitled to qualified immunity on these claim(s).

> "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) (citation omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.' " *Id.* at 741, 131 S. Ct. 2074 (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L.Ed.2d 523 (1987)).
>
> To determine if a right is clearly established, we first look for Supreme Court precedent. *Mammaro* [*v. New Jersey Div. of Child Protection and Permanency*], 814 F.3d [164,] 169 [(3d Cir. 2016)]. If there is none, we may rely on a "'robust consensus of cases of persuasive authority' in the Court[s] of Appeals." *Id.* (quoting *Taylor v. Barkes*, - U.S. –, 135 S. Ct. 2042, 2044, 192 L. Ed. 2d 78 (2015) (per curiam)). "[A]lthough earlier cases involving

fundamentally similar facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *L.R.* [*v. School Dist. of Phila.*], 836 F.3d [235,] 248 [(3d Cir. 2016)] (quoting *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)).

We exercise our discretion to decide which of the two prongs of the qualified immunity analysis to address first "in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). For reasons of constitutional avoidance, we may begin by determining whether a right was clearly established. *Camreta v. Greene*, 563 U.S. 692, 705, 131 S. Ct. 2020, 179 L. Ed. 2d 1118 (2011). Yet in other cases "following the two-step sequence—defining constitutional rights and only then conferring immunity—is sometimes beneficial to clarify the legal standards governing public officials." *Id.* at 707, 131 S.Ct. 2020.

*Mirabella v. Villard*, 853 F.3d 641, 648–49 (3d Cir. 2017).

Defendants Kennar and Gibbs argue they are entitled to qualified immunity because the second amended complaint does not support a finding that they violated Mr. Coleman's constitutional rights. According to them, "[s]ince there was no constitutional violation, there is no way that the Defendants would know that their actions violated the Plaintiff's rights." (Dkt. No. 33-1 at p.30) Thus, it appears that defendants are asserting they are entitled to qualified immunity under prong one of the qualified immunity analysis. However, as discussed in *supra* Part III.B.iii, Mr. Coleman has sufficiently alleged that Kennar and Gibbs violated his constitutional rights when they were deliberately indifferent to his serious medical needs. Furthermore, as discussed in *supra* Part III.B.iv, Mr. Coleman has sufficiently alleged that Gibbs committed a constitutional violation when he used excessive force by throwing him into the SHU cell.

Additionally, it is worth noting that the United States Supreme Court set up the framework for analyzing claims of deliberate indifference to serious medical needs prior to the

events giving rise to Mr. Coleman's deliberate indifference claims in 2013. *See, e.g., Consonery v. Pelzer*, 558 F. App'x 271, 275 (3d Cir. 2014) (noting that claims of deliberate indifference to serious medical needs was clearly established in 2009 when the events giving rise to plaintiff's claims arose). Furthermore, the use of force to maliciously and sadistically to cause harm against a prisoner was clearly established in 2013. *See, e.g.*, *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) ("use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*) (citation omitted); *Perry v. Dickhaut*, 125 F. Supp. 3d 285, 298 (D. Mass. 2015) ("It was clearly established in 2010 that a prison official may not inflict 'unnecessary and wanton and suffering' by using force against an inmate 'maliciously and sadistically for the very purpose of causing harm.'") (quoting *Hudson*, 503 U.S. at 6).

Therefore, Kennar and Gibbs are not entitled to qualified immunity on the claims remaining against them for which Mr. Coleman has sufficiently stated a claim.

## IV. CONCLUSION

For the foregoing reasons, defendant Moubarek's motion to dismiss the second amended complaint for lack of personal jurisdiction is granted. Defendants the Estate of Kaough, Kennar, Gibbs, Turner-Foster, Newland and Reyes' motion to dismiss the second amended complaint is granted in part and denied in part. The second amended complaint against the Estate of Kaough is dismissed without prejudice for failure to serve. The second amended complaint against Turner-Foster, Newland and Reyes is dismissed without prejudice for failure to state a claim. Mr. Coleman's cruel and unusual punishment and conspiracy claims against defendants Kennar and Gibbs are dismissed without prejudice for failure to state a claim. Mr. Coleman's deliberate indifference to his serious medical needs claim against Kennar and Gibbs are not dismissed. Mr.

Coleman's excessive force claim against Kennar is dismissed without prejudice for failure to state a claim. Mr. Coleman's excessive force claim against Gibbs is dismissed without prejudice for failure to state a claim except that it is not dismissed against Gibbs with respect to his allegations of being thrown into the SHU cell on January 27, 2013. An appropriate order will be entered.


DATED:  June 16, 2017                                    s/Robert B. Kugler
                                                         ROBERT B. KUGLER
                                                         United States District Judge